1 | Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
2 | 10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
3 | Telephone: (424) 256-2884
Facsimile: (424) 256-2885
4 | E-mail: bheikali@faruqilaw.com

5 | [Additional Captions on Signature Page]

6 | *Attorney for Plaintiff James Geller*

7

8 | **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
9

10

11 | JAMES GELLER, Individually and on Behalf of All Others Similarly Situated, | Case No.:

12 | Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934**

13 | vs.

14 | SILVER SPRING NETWORKS, INC., SCOTT A. LANG, LAURA D. TYSON, WARREN M. WEISS, THOMAS R. KUHN, RICHARD A. SIMONSON, JONATHAN SCHWARTZ, THOMAS H. WERNER, and PETER VAN CAMP, | **JURY TRIAL DEMANDED**

15

16

17

18 | Defendants,

19 | .

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff James Geller ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Silver Spring Networks, Inc. ("Silver Spring" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Silver Spring, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Merger") between Silver Spring and Itron, Inc. ("Itron").

2. On September 17, 2017, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $16.25 in cash for each share of Silver Spring stock they own (the "Merger Consideration"), representing $956.6 million in equity value.

3. On November 2, 2017, in order to convince Silver Spring shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement on a Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose certain material information in violation of Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each as required by Section 14(a) of the Exchange Act.

5. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) management's financial forecasts for the Company that were relied upon by the Board in recommending the Company's shareholders vote in favor of the Proposed Merger; and

2

CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934

(ii) financial forecasts utilized by the Company's financial advisor, Evercore Group L.L.C. ("Evercore").

6. It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the forthcoming stockholder vote in order to allow the Company's stockholders to make an informed decision regarding the Proposed Merger.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to Silver Spring stockholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Silver Spring is headquartered in this District.

## PARTIES

11. Plaintiff is, and at all relevant times has been, a holder of Silver Spring common stock.

3

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

12. Defendant Silver Spring is incorporated in Delaware and maintains its principal executive offices at 230 W. Tasman Drive, San Jose, California 95134. The Company's common stock trades on the NYSE under the ticker symbol "SSNI."

13. Individual Defendant Scott A. Lang has served as Chairman of the Board since September 2004 and Executive Chairman since September 2015.

14. Individual Defendant Michael A. Bell has served as President, Chief Executive Officer, and as a director of the Company since September 2015.

15. Individual Defendant Laura D. Tyson has served as a director of the Company since June 2009.

16. Individual Defendant Warren M. Weiss has served as a director of the Company since November 2003.

17. Individual Defendant Thomas R. Kuhn has served as a director of the Company since February 2005.

18. Individual Defendant Richard A. Simonson has served as a director of the Company since October 2009.

19. Individual Defendant Jonathan Schwartz has served as a director of the Company since April 2011.

20. Individual Defendant Thomas H. Werner has served as a director of the Company since March 2009.

21. Individual Defendant Peter Van Camp has served as a director of the Company since November 2013.

22. The Individual Defendants referred to in paragraphs 13-20 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Silver Spring (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated

1  with any Defendant.

2      24.    This action is properly maintainable as a class action because:

       a.    The Class is so numerous that joinder of all members is impracticable. As of October 27, 2017, there were approximately 54,142,118 shares of Silver Spring common stock outstanding, held by hundreds of individuals and entities scattered throughout the country. The actual number of public shareholders of Silver Spring will be ascertained through discovery;

       b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

           i)    whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

           ii)    whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

           iii)    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

           iv)    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

       c.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.  A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.   The Proposed Merger**

25.  Silver Spring creates, builds, and deploys large-scale networks and solutions enabling the Internet of Things ("IoT") for critical infrastructure such as energy via a smart grid network platform, gas, water, and street lights.

26.  On September 18, 2017, Silver Spring and Itron issued a joint press release announcing the Proposed Merger, which states in pertinent part:

> Liberty Lake, WA and San Jose, CA — Sept. 18, 2017 — Itron, Inc. (NASDAQ: ITRI) and Silver Spring Networks, Inc. (NYSE: SSNI) today announced that they have signed a definitive agreement for Itron to acquire all outstanding shares of Silver Spring for $16.25 per share in cash. The transaction is valued at approximately $830 million, net of $118 million of Silver Spring's cash. This represents a premium of 25 percent to Silver Spring's closing share price on Sept. 15, 2017, the last trading day prior to the announcement of the transaction. The transaction has been unanimously approved by the boards of directors of both companies.
>
> Headquartered in San Jose, California, Silver Spring provides Internet of Important Things™ connectivity platforms and solutions to utilities and cities. In 2016, Silver Spring generated revenues of $311 million with a gross margin of 44 percent and ended the year with $1.2 billion of backlog. With its global footprint in the smart utility and smart city sectors, Silver Spring generated more than 20 percent of its revenues

6
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

through its primarily recurring managed services and SaaS solutions, an area of strategic focus for Itron. To date, Silver Spring has delivered more than 26.7 million network-enabled devices across five continents.

Itron anticipates approximately $50 million in annualized cost synergies to be substantially realized within three years of completing the transaction by optimizing combined operations and expenses. The acquisition is expected to have a positive impact on Itron's long-term growth rate, be accretive to gross margin in the first year after completing the transaction and be accretive to non-GAAP EPS and adjusted EBITDA in the second year, excluding one-time, transaction-related costs and including stock-based compensation costs that Silver Spring currently excludes from its reported non-GAAP results.

"The addition of Silver Spring brings more capabilities to our offerings and advances our strategy of delivering highly secure, value-generating solutions for the critical infrastructure within utilities, smart cities and the broader industrial IoT sector," said Philip Mezey, Itron's president and chief executive officer. "By converging our complementary, standards-based technologies, we will enhance customer efficiencies with solutions that optimize devices, network technologies, outcomes and analytics. This enables us to increase investment in new solutions and accelerate innovation for our combined customer base, covering more than 200 million people.

"This transaction also increases our presence in the sizable industrial IoT segment, driving higher growth with recurring revenues and enabling Itron to increase profitability beyond our mid-teens EBITDA margin target," continued Mezey. "Combining Silver Spring's entrepreneurial culture and proven capabilities with Itron's operational strengths, depth of solutions and customer intimacy will result in a company that is well-positioned in the fast growing critical infrastructure space. We look forward to welcoming Silver Spring's talented team of engineers and professionals to Itron and are confident that together, we are best equipped to provide industry-leading solutions that will deliver greater value to our customers."

Mike Bell, president and chief executive officer of Silver Spring Networks, said, "Joining forces with Itron will enable us to help more utilities and cities adopt the industrial Internet, improve their performance and reliability, and better position themselves for a connected future. This strong combination will address end-to-end solutions for our customers and will create immediate value for our stockholders; it will also provide new opportunities for our employees as part of a larger, global technology leader for the Internet of Important Things."

27.   The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth. For instance, the Company ended 2016 with $1.2 billion in total backlog—defined as future product and service billings it expects to

7
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

generate pursuant to existing contracts—a more than 50% increase from the end of the prior year. The Company also achieved record bookings in 2016, as well as positive billings growth in comparison to the prior year.

28.   In sum, it appears that Silver Spring is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

## II.   The Materially Incomplete and Misleading Proxy

29.   On November 2, 2017, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger. The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits both required and material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *Financial Forecasts that Violate Regulation G and SEC Rule 14a-9*

30.   The Proxy discloses certain financial forecasts for the Company on pages 54-57 of the Proxy. However, the Proxy fails to provide material information concerning the forecasts, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger. Proxy 54.

31.   Specifically, the Proxy provides values for Non-GAAP (generally accepted accounting principles) Gross Profit, Non-GAAP Operating Income, Adjusted EBITDA and Non-GAAP Net Income, but fails to provide: (i) the line item forecasts detailed below for the metrics used to calculate these non-GAAP measures; or (ii) a reconciliation of the non-GAAP forecasts to

8

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

the most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy 56-57.

32. When a company discloses non-GAAP financial measures in a Proxy that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the Company must, pursuant to SEC regulatory mandates, also disclose all forecasts and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

33. Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders. Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Silver Spring included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

---

[1]  Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

9
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

34. The SEC has repeatedly emphasized that disclosure of non-GAAP forecasts can be inherently misleading, and has therefore heightened its scrutiny of the use of such forecasts.[2] Indeed, the SEC's Division of Corporation Finance released a new and updated Compliance and Disclosure Interpretation ("C&DIs") on the use of non-GAAP financial measures to clarify the extremely narrow and limited circumstances, known as the business combination exemption, where Regulation G would not apply.[3]

35. More importantly, the C&DI clarifies when the business combination exemption does not apply:

> There is an exemption from Regulation G and Item 10(e) of Regulation S-K for non-GAAP financial measures disclosed in communications subject to Securities Act Rule 425 and Exchange Act Rules 14a-12 and 14d-2(b)(2); it is also intended to apply to communications subject to Exchange Act Rule 14d-9(a)(2). This exemption does not extend beyond such communications. Consequently, if the same non-GAAP financial measure that was included in a communication filed under one of those rules is also disclosed in a Securities Act registration statement, proxy statement, or tender offer statement, this exemption from Regulation G and Item 10(e) of Regulation S-K would not be available for that non-GAAP financial measure.

*Id.*

36. Thus, the C&DI makes clear that the so-called "business combination" exemption from the Regulation G non-GAAP to GAAP reconciliation requirement applies solely to the extent that a third-party such as financial banker has utilized projected non-GAAP financial measures to render a report or opinion to the Board. To the extent the Board also examined and relied on internal financial forecasts to recommend a transaction, Regulation G applies.

37. Because the Proxy explicitly discloses that the forecasts were provided by the Company to the Board to "evaluat[e] a possible transaction with Itron," Proxy 54, no exemption

---

[2] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[3] *Non-GAAP Financial Measures*, U.S. Securities and Exchange Commission (Oct. 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm#101. To be sure, there are other situations where Regulation G would not apply but are not applicable here.

10

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

from Regulation G is applicable.

38. Thus, in order to bring the Proxy into compliance with Regulation G as well as cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information on pageS 56-57, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

39. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such forecasts are necessary to make the non-GAAP forecasts included in the Proxy not misleading. Indeed, the Defendants acknowledge the misleading nature of non-GAAP forecasts as Silver Spring stockholders are cautioned:

> The non-GAAP metrics should not be considered in isolation from, are not a substitute for, and do not purport to be an alternative to, revenue, gross profit, operating income, operating expense, net income or any other performance measure derived in accordance with GAAP. These non-GAAP measures may be different from similarly titled non-GAAP measures used by other companies. In addition, these non-GAAP measures are not based on any comprehensive set of accounting rules or principles. Silver Spring believes that non-GAAP measures have limitations in that they do not reflect all of the amounts associated with its results of operations as determined in accordance with GAAP.

Proxy 55.

*Financial Forecasts that Violate SEC Rule 14a-9*

40. Moreover, certain line items of the forecasts were also utilized by the Company's financial advisor, Evercore, to render a report to the Board of its opinion regarding the fairness of the Proposed Transaction. Proxy 46. Specifically, Evercore utilized certain of management projected line item financial measures, based upon guidance from the Company's management, including earnings before interest and taxes, or EBIT, less income tax expense, capital expenditures, increases in net working capital and certain other cash expenses, as applicable, plus depreciation and amortization, in order to calculate the Company's unlevered free cash flows

1  ("UFCF").  Proxy 57.[4]

2  41.     The definition of UFCF is, in and of itself, and separate and apart from the mandates of Regulation G, materially false and/or misleading in violation of SEC Rule 14a-9 (17 C.F.R. 240.14a-9).  Because the line items used to calculate UFCF were not disclosed, stockholders are unable to discern the veracity of Evercore's discounted cash flow ("DCF") analysis.  Without further disclosure of the line items used in its UFCF calculation, stockholders are unable to compare Evercore's UFCF calculations with the Company's financial forecasts.  Thus, the Company's stockholders are being materially misled regarding the value of the Company.

42.     These key inputs are material to Silver Spring shareholders, and their omission renders the summary of Evercore's DCF valuation analysis incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value… The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

43.     Clearly, shareholders would find this information material since the Board's unanimous recommendation that shareholders vote in favor the Proposed Merger was based, in part on the following:

---

[4] Plaintiff alleges, based on the clear and plain language of Regulation G, that all non-GAAP internal financial forecasts that were relied on by the Board must comply with Regulation G, even if Evercore also utilized those financial forecasts.

12

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

- familiarity with Silver Spring's business, operations, assets, properties, business strategy and competitive position and the nature of the industries in which Silver Spring operates, industry trends, and economic and market conditions, both on a historical and on a prospective basis;

- its belief that, based on its knowledge and discussions with Silver Spring senior management regarding Silver Spring's business, financial condition, results of operations, competitive position, business strategy and prospects, as well as the risks (including the risks described in Silver Spring's filings with the SEC) involved in, and the timing and likelihood of actually achieving additional value for Silver Spring stockholders from successfully executing on Silver Spring's business strategy, that on a risk-adjusted basis, remaining independent and executing on Silver Spring's business strategy was not reasonably likely to create value for Silver Spring stockholders greater than the merger consideration; . . . .

- the continued costs, risks and uncertainties associated with continuing to operate independently as a public company.

Proxy 43-46.

44. In sum, the Proxy independently violates both: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Merger from Silver Spring shareholders.

45. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth

1  herein.

2  47. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use
3  of the mails or by any means or instrumentality of interstate commerce or of any facility of a
4  national securities exchange or otherwise, in contravention of such rules and regulations as the
5  Commission may prescribe as necessary or appropriate in the public interest or for the protection
6  of investors, to solicit or to permit the use of his name to solicit any proxy or consent or
7  authorization in respect of any security (other than an exempted security) registered pursuant to
8  section 78l of this title." 15 U.S.C. § 78n(a)(1).

9  48. As set forth above, the Proxy omits information required by SEC Regulation G, 17
10 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other
11 things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation
12 of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other
13 clearly understandable method" of the non-GAAP measure to the "most directly comparable"
14 GAAP measure.  17 C.F.R. § 244.100(a).

15 49. The failure to reconcile the numerous non-GAAP financial measures included in
16 the Proxy violates Regulation G and constitutes a violation of Section 14(a).

## COUNT II

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

20 50. Plaintiff incorporates each and every allegation set forth above as if fully set forth
21 herein.

22 51. SEC Rule 14a-9 prohibits the solicitation of shareholder votes in proxy
23 communications that contain "any statement which, at the time and in the light of the circumstances
24 under which it is made, is false or misleading with respect to any material fact, or which omits to
25 state any material fact necessary in order to make the statements therein not false or misleading."
26 17 C.F.R. § 240.14a-9.

14
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

52. Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading*." 17 C.F.R. § 244.100(b) (emphasis added).

53. Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial forecasts for the Company.

54. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

55. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

56. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

57. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The

1  Individual Defendants were negligent in choosing to omit material information from the Proxy or
2  failing to notice the material omissions in the Proxy upon reviewing it, which they were required
3  to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately
4  involved in the process leading up to the signing of the Merger Agreement and the preparation of
5  the Company's financial forecasts.

6  58.  Silver Spring is also deemed negligent as a result of the Individual Defendants'
7  negligence in preparing and reviewing the Proxy.

8  59.  The misrepresentations and omissions in the Proxy are material to Plaintiff and the
9  Class, who will be deprived of their right to cast an informed vote if such misrepresentations and
10 omissions are not corrected prior to the vote on the Proposed Merger.

11  60.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise
12 of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate
13 and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act)**

17  61.  Plaintiff incorporates each and every allegation set forth above as if fully set forth
18 herein.

19  62.  The Individual Defendants acted as controlling persons of Silver Spring within the
20 meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as
21 officers and/or directors of Silver Spring, and participation in and/or awareness of the Company's
22 operations and/or intimate knowledge of the incomplete and misleading statements contained in
23 the Proxy filed with the SEC, they had the power to influence and control and did influence and
24 control, directly or indirectly, the decision making of the Company, including the content and
25 dissemination of the various statements that Plaintiff contends are materially incomplete and
26 misleading.

27  63.  Each of the Individual Defendants was provided with or had unlimited access to

16
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing the Proxy.

65. In addition, as described herein and set forth at length in the Proxy, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

66. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

67. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

68. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C. Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  November 9, 2017

Respectfully submitted,

**FARUQI & FARUQI, LLP**

**OF COUNSEL:**

By: */s/ Benjamin Heikali*

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

Benjamin Heikali, Bar No. 307466
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Tel.: (424) 256-2884
Fax: 424.256.2885
Email: bheikali@faruqilaw.com

*Counsel for Plaintiff*

*Counsel for Plaintiff*

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, James Geller ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed a draft complaint against Silver Spring Networks, Inc. (Silver Spring") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2. Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3. Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in Silver Spring securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6. In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 6th day of November 2017.

_____
James Geller

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 01/13/17 | 100 |
| | | |
| | | |
| | | |